UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARVOUS CLAY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-01269-TWP-MJD |
| | ) |
| WENDY KNIGHT, | ) |
| | ) |
| Respondent. | ) |

**ENTRY ON PETITION FOR WRIT OF HABEAS CORPUS**

This matter is before the Court on a Petition filed by Darvous Clay ("Mr. Clay") for a writ of habeas corpus challenging a prison disciplinary proceeding identified as No. CIC 14-10-0189. For the reasons explained in this Entry, Mr. Clay's Petition must be **denied**.

**I. DISCUSSION**

**A.     Legal Standard**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

B.     **The Disciplinary Proceeding**

On October 23, 2014, Internal Affairs Officer David Wilson issued a Report of Conduct charging Mr. Clay with assault and battery in violation of Code A-102.  The Report of Conduct states:

> On 10/19/14 at approximately 3:15 PM, Offender William Lloyd #230839 was assaulted in the bathroom on the 4 range of the 2/4 side of C-Unit. An investigation was launched.
>
> At the completion of the investigation it was found that Offender Darvous Clay #925665 was responsible for the assault on Offender Lloyd.
>
> I am confident Offender Clay is in violation of ADP Code 102.
>
> The Conduct Report was based upon a Report of Investigation of Incident that states:
>
> On Sunday, October 19, 2014 Offender William Lloyd #230839 was assaulted in the bathroom on the upper range on the 2/4 side of C-unit.  After conducting interviews with multiple offenders it was found that the assault took place after a verbal altercation in the day room.
>
> The assault resulted in Offender Lloyd sustaining multiple lacerations on the back of his head.
>
> Offender Clay was identified by multiple witnesses as the aggressor in the assault.

(Filing No. 13-2.)  After being found guilty of the charged offense, the Indiana Department of Correction's ("IDOC") final review authority decided to vacate the conviction and order a rehearing in the matter on April 20, 2015.  (Filing No. 13-10.)

Mr. Clay was notified of the charge on rehearing on April 28, 2015, when he was served with the Report of Conduct and the Notice of Disciplinary Hearing (Screening Report) (Filing No. 13-12).  Mr. Clay requested offender William Lloyd as a witness, but the request was denied because offender Lloyd had been released from IDOC (Filing No. 13-12).  Mr. Clay also requested the video as evidence (Filing No. 13-12), and on May 11, 2015 he requested additional witness statements from several correction officers.  (Filing No. 13-14.)

2

Officer Richard Sidwell provided the following witness statement, "I did not at any time tell offender Clay #925665 that it was not him." (Filing No. 13-15.)

Sergeant Farmer provided the following witness statement:

I Sgt. A. Farmer responded to a 10-10 in C-Unit. Ther [sic] was one offender bleeding in the restroom, I ordered the cell house to be secured to conduct a check to find the offender that was fighting. Offender Clay was found in his bunk with no visible signs of being in a fight, I then moved to the next cell.

(Filing No. 13-16.)

Officer Tonuc stated "I was not in the unit at the time of incident. I do not know your involvement." (Filing No. 13-17.)

Officer David Wilson also submitted a statement:

Offender William Lloyd was assaulted in C-Unit. Offender Lloyd identified the offender that assaulted him as an offender that goes by the moniker "Loc". Offender Lloyd then stated he believes "Loc" lived in 27 on 2. Offender Lloyd stated it was either that room or a room close to it and just to be sure his bunkie just came back from a segregation unit and had long dreadlocks. Offender Darvous Clay matched the description. I then showed Offender Lloyd a photograph of Offender Clay and he positively identified him as the assailant.

(Filing No. 13-18).

A video summary was prepared for the original hearing and Officer Sidwell stated in his summary: "I Officer Sidwell watched the camera for the 2/4 C-Unit. At 3:16 Pm [sic] I saw someone swing in the upper right bathroom, due to the movement of the camera this is all that was [sic] saw. Reviewed on 10/27/14 at 10:30 AM". (Filing No. 13-20.)

The disciplinary hearing was held on May 21, 2015. In the Report of Disciplinary hearing, the Hearing Officer noted, "Offender claims that he was assisting the offender that was assaulted, that he (Darvous Clay 925665) was not the one that assaulted the offender. Offender asked me (Lt. St. John) to take into account previous hearing officer's video review as camera footage is not available." (Filing No. 13-21.) The Hearing Officer relied upon the staff reports, evidence from

witnesses, the IA investigation report, and the audio interview of the victim in finding that Mr. Clay had violated Code A-102.  The sanctions imposed included a written reprimand, telephone restriction (already served), one year of disciplinary segregation (partially served), the deprivation of 365 days of earned credit time, and the demotion from credit class I to class II.  The Hearing Officer imposed the sanctions because of the seriousness, frequency, and nature of the offense and the degree to which the violation disrupted or endangered the security of the facility.  ([Filing No. 13-21](#).)

Mr. Clay filed an appeal to the Facility Head, which was denied on June 4, 2015 ([Filing No. 13-22](#), [Filing No. 13-23](#)).  Mr. Clay then appealed to the Final Review Authority, who denied the appeal on July 13, 2015.  ([Filing No. 13-24](#).)

**C.   Analysis**

Mr. Clay is not entitled to habeas relief because he was afforded due process.  He asserts the following claims: 1) he was denied a witness; 2) he should have received an expungement instead of a re-hearing; 3) Department of Correction policy was violated; and 4) he was denied the video on re-hearing.

**1.   Denial of Witness and Expungement.**  In claims one and two of his Petition, Mr. Clay alleges he was denied a witness and he should have received an expungement instead of a re-hearing.  However, Mr. Clay did not raise these issues during his administrative appeal.

The Respondent argues persuasively, that Mr. Clay has procedurally defaulted any claims regarding whether he was denied a witness at the hearing and whether he should have received an expungement instead of a re-hearing.  To obtain review of a claim for habeas relief, a prisoner must first exhaust his state administrative remedies.  *Markham v. Clark*, 978 F.2d 993, 995–96 (1992); *see* 28 U.S.C. § 2254(b)(1)(A), (c).  Exhaustion requires that the prisoner present each

claim he seeks to raise in his habeas petition at each level of the administrative appeals process. *Markham*, 978 F.2d at 995-96; *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The prisoner must provide sufficient information to put a reasonable prison official on notice as to the nature of his claim, so that the prison officials are afforded an opportunity to correct any problems. *See Moffat v. Broyles*, 288 F.3d 978, 982 (7th Cir. 2002). Failure to exhaust a claim results in a procedural default that bars federal habeas relief. *Id.* at 981-82.

In his disciplinary appeal, Mr. Clay only challenged whether his due process was violated because the video was not available on rehearing. Specifically, he argued:

> The Deputy Attorney General (Kristin Garn) and representatives of the I.D.O.C. had an opportunity to review my case an [sic] reconsider the factual dispute, they vacated my conviction and remanded my case for a re-hearing on April 20, 2015. My rehearing was done on May 21, 2015 in which no new evidence was presented to aid in me being convicted again. Although there is evidence not available, which was the video footage that was a part of my first conviction being vacated. The Disciplinary Code for Offenders: section Evidence; part (g), (k), (L) states that video evidence is to be kept and stored in a secure location for (6) six months, or until all remedies have been exhausted. Also merely listing the number or name of the rule broken in the body of the write-up is not enough. There is supposed to be a detailed description, this clearly violates my procedural due-process right. The hearing officer showed blatant disregard for the missing evidence and also the reasons J. Lyttle (appeal reviewing officer vacated my prior conviction. I'm asking you to dismiss these charges to prevent further duress.

([Filing No. 13-22](Filing No. 13-22)).

There is no indication in this statement that Mr. Clay is challenging any aspect of his disciplinary conviction other than a violation of IDOC policy (discussed below) and whether his due process rights were violated because the video was not available on rehearing. Because Mr. Clay did not raise these issues in his administrative appeal he has procedurally defaulted these challenges.

2. **Violation of IDOC Policy.** Next, Mr. Clay argues that IDOC policy was violated because there was not a detailed description of his violation in the Report of Conduct. Prison

regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The process due here is measured by the Due Process Clause of the United States Constitution, not the internal policies of the prison. *See Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir.2004) ("[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution."); *see also Brown v. Rios*, 196 Fed.Appx. 681, 683 (10th Cir.2006) (unpublished) (same).

The claim that prison authorities failed to follow various policies before and during the challenged disciplinary proceeding are summarily dismissed as insufficient to support the relief sought by Mr. Clay. *See Keller v. Donahue,* 2008 WL 822255, 271 Fed.Appx. 531, 532 (7th Cir. Mar. 27, 2008) (in a habeas action, an inmate "has no cognizable claim arising from the prison's application of its regulations."); *Hester v. McBride*, 966 F. Supp. 765, 774-75 (N.D.Ind. 1997) (violations of the Indiana Adult Disciplinary Policy Procedures do not state a claim for federal habeas relief). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). As such, Mr. Clay is not entitled to relief on these grounds.

3. **Mr. Clay was denied the video on re-hearing.** Finally, Mr. Clay argues that his due process rights were violated because the video evidence was not available to him. For unexplained reasons, the video evidence was not available on rehearing. However, a summary of the video was prepared after the original Report of Conduct was issued and it states that "someone" swung in the upper right bathroom but does not identify a specific individual. (Filing No. 13-20.)

A prisoner has a limited right to present witnesses and evidence in his defense, consistent with correctional goals and safety. *Wolff,* 418 U.S. at 566. Due process only requires access to

witnesses and evidence that are exculpatory. *Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride,* 81 F.3d 717, 721 (7th Cir. 1996). The denial of the right to present evidence will be considered harmless, unless the prisoner shows that the evidence could have aided his defense. *See Jones v. Cross,* 637 F.3d 841, 847 (7th Cir. 2011).

Here, Mr. Clay makes no assertion that the video evidence would have been exculpatory. In fact, this is his entire argument on this issue: My remedies were not exhausted when my re-hearing was designated. So the video evidence should of [sic] still been available, especially since it was part of the evidence that resulted in my sanctions being vacated, and given a re-hearing. (Filing No. 1 at 4.) Based on the video summary, the video evidence can, at best, be described as neutral. It is neither exculpatory nor inculpatory. However, there is significant other evidence that supports the guilty finding. For example, several witnesses specifically identified Mr. Clay as the attacker. (Filing No. 13-2.) The victim also positively identified a photograph of Mr. Clay as his attacker. (Filing No. 13-18.) It is noted herein that the due process "some evidence" standard established by *Hill* has been met. This standard is lenient, "requiring only that the decision not be arbitrary or without support in the record." *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999).

Additionally, when a due process error occurs in a disciplinary proceeding, the burden is on the offender to show that the error had a substantial and injurious effect on the outcome of the proceeding. *O'Neal v. McAninch*, 513 U.S. 432 (1995). Given the facts set forth above, Mr. Clay cannot show that the outcome of the proceeding would have changed had the video been available.

## II.  CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Clay to the relief he seeks.  Accordingly, Mr. Clay's Petition for a Writ of Habeas Corpus must be **DENIED** and the action dismissed.  Judgment consistent with this Entry shall now issue.

**SO ORDERED**.

Date:  12/16/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Darvous Clay, #925665
Correctional Industrial Facility
Inmate Mail/Parcels
5124 West Reformatory Road
Pendleton, Indiana  46064

Marjorie H. Lawyer-Smith
OFFICE OF THE INDIANA ATTORNEY GENERAL
marjorie.lawyer-smith@atg.in.gov